Arthur NEWMARK, M.D., Appellant,

v.

*Anthony PRINCIPI, Secretary, United States Department of Veterans Affairs; Tracy Barrett, in her official capacity as Acting Chief of Staff, and in her individual capacity; Michael Berkwits, in his official capacity as Director of the Emergency Room, and in his individual capacity; Earl Fallast; John Doe Nos. 1–5; Philadelphia Veterans Affairs Medical Center.

* (Substituted Pursuant to F.R.A.P. 43(c)).

No. 01–1809.

United States Court of Appeals, Third Circuit.

Argued Jan. 17, 2002.

Filed March 13, 2002.

Alice W. Ballard [Argued], Law Office of Alice W. Ballard, Philadelphia, PA, for Appellant Arthur Newmark.

Susan D. Bricklin [Argued], Office of the U.S. Attorney, Philadelphia, PA, for Appellee Secretary of Veterans Affairs.

Before RENDELL, FUENTES, and MAGILL,* Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

In 1999, Arthur Newmark filed a Bivens action against the Secretary of the United States Department of Veterans Affairs, and against the Acting Chief of Staff, the Director and Emergency Room Director of the Philadelphia Veterans Affairs Medical Center, (hereinafter PVAMC), and the Center itself. In 2000, he filed an amended complaint adding claims against PVAMC for violations of the Age Discrimination in Employment Act (hereinafter ADEA). Later that year, Newmark agreed to dismiss all claims in return for an offer of judgment that paid $297,154 in back pay. The terms of the offer of judgment entered by the court, provided for the payment of attorneys' fees to be "determined by the court under the Equal Access to Justice Act" for the portion of the work attributable directly to the ADEA claims. After briefing by the parties, the District Court determined that since the offer of judgment specifically provided for the award of attorneys' fees under the EAJA, the Court did not need to establish whether the ADEA would independently authorize such fees. The court considered Newmark's argument that under 28 U.S.C. § 2412(b) he was entitled to

---

* Hon. Frank J. Magill, Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

fees against the government to the same extent as he could have recovered from a private party under the ADEA. The District court disagreed, finding that the limit of $125 under § 2412(d) applied and that the amount of the fees was required by the statute to be capped at $125 per hour. Newmark has challenged only the final conclusion—that the statutory provisions of the Equal Access to Justice Act require that attorneys' fees be capped at $125 per hour. For the reasons cited below, we conclude that the District Court erred in so finding, and we will vacate and remand for further proceedings.

## I.  Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, since Newmark's claims arose under the ADEA, 29 U.S.C. § 621, et seq. and under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The fee award was also determined pursuant to a federal statute, 28 U.S.C. § 2412, the Equal Access to Justice Act (EAJA). The District Court issued a final order in this case, and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

■■■ Appellant urges that we apply a plenary standard of review, since we are being asked to construe a statute. We agree. An award of attorneys' fees under the EAJA is generally reviewed under an abuse of discretion standard. *See, e.g., Dewalt v. Sullivan*, 963 F.2d 27, 28 (3d Cir.1992). Here, however, as in *Dewalt*, the question of whether the District Court abused its discretion turns on whether the court properly applied the statutory provisions, which presents a question of law to which we apply plenary review. *Id.*

■■■ We note at the outset that this case comes to us in an unusual procedural posture. The Department of Veterans Affairs argued convincingly before the District Court for an interpretation of the statute that was very close to the District Court's actual interpretation, namely that the cap on fees set forth in subsection § 2412(d) controls an award under § 2412(b). Between that time and the briefing before us, the District of Colorado issued *Villescas v. Richardson*, 145 F.Supp.2d 1228 (D.Colo. 2001), in which the court determined that, for the purposes of an ADEA claim, the analysis under the statute should be bifurcated, and attorneys' fees should be awarded under the second sentence of § 2412(b). *Id.* at 1231. Because private litigants under the ADEA have remedies governed by the FLSA, the court interpreted the second sentence of § 2412(b) to refer it to the FLSA's allowance of "reasonable attorney's fee ... and costs of the action." The court calculated the reasonable attorney's fee using a traditional lodestar method. *Id.* According to the attorney appearing before us, this opinion generated sufficient internal discussions among "the Department of Justice components and U.S. Attorneys' offices" that they have changed their position. Appellee was thus constrained to argue before us that while its arguments were made before the District Court in good faith, it now concedes the correctness of Newmark's position. However, the District Court order to the contrary is still before us and Appellant urges us to reverse and remand. Because decisions made in other jurisdictions are not binding on us, we will examine and interpret the statute ourselves in the light of our precedent.

## II.  The Equal Access to Justice Act

### A.  The Structure of the Act

■■■ The relevant portions of the statute in question, the EAJA, provide:

**28 U.S.C. § 2412.  Costs and fees**

**(a)(1)** Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

. . .

**(b)** Unless expressly prohibited by statute, a court *may* award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the *prevailing party* in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. *The United States shall be liable* **for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.**

. . .

**(d)(1)(A)** Except as otherwise specifically provided by statute, a court *shall* award to a *prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or *against the United States* in any court having jurisdiction of

that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

. . .

**(2) For the purposes of this subsection—**

**(A)** "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees. (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) **attorney fees shall not be awarded in excess of $125 per hour** unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

(Emphasis added).

The fee cap appears in § 2412(d)(2)(A), and is specifically limited "for purposes of this subsection," i.e., to § 2412(d). If § 2412(d) serves only to expand upon and clarify § 2412(b), then fees awarded under § 2412(b) might be subject to the cap on fees. If, on the other hand, § 2412(b) and § 2412(d) present alternative awards, the limit under § 2412(d) should not apply. The District Court noted that courts frequently have relied on a general authorization of fees under § 2412(b) as the predicate for the award calculation under

§ 2412(d).[1] From that consistent coupling, the District Court inferred that the two sections were part of an integrated statute. In so concluding, the District Court overlooked the distinctions between the specific provisions that follow the general authorization in § 2412(b). We acknowledge that we have been imprecise in awarding fees under the Equal Access to Justice Act without specifically indicating the statutory provisions under which the award is being sought. However, this is understandable, because we have not previously been presented with the precise issue before us, namely whether the specific provisions of § 2412(b) do in fact stand alone as authority for attorneys' fees, separate from § 2412(d).[2] Rather, our cases have assumed the general grant in § 2412(b) as authorizing the calculation under § 2412(d). But, appellants—and now appellees as well—have drawn our focus to the statutory language, and make a convincing point. We will begin by discussing the statutory language, including its origins.

■ The first canon of statutory construction is to examine the language of the statute itself and ascertain its plain meaning. *Sekula v. FDIC*, 39 F.3d 448 (3d Cir.1994). The initial section of § 2412(b) provides that courts "*may* award reasonable fees . . . to the prevailing party," which could refer either to the United States or its opponent. It then states in the second section the parameters of the United States' liability if it does not prevail in certain instances: "The United States shall be liable . . . to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such award." By contrast, in § 2412(d), Congress *mandates* fees to be awarded where the government is not the prevailing party—in any type of civil action—and its position was not substantially justified. Under § 2412(d), there is a cap on such fees.

■ It is incumbent upon courts to read each statutory provision as having meaning, and to construe the statute so the "meaning of each word inform[s] the others and 'all in their aggregate tak[e] their purport from the setting in which they are used.'" *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 454, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (quoting *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir.1941)). Having been advised of the parties' interpretation we conclude that it is perhaps the only way to give meaning to the two sections. The ability of a court to award fees is recognized in § 2412(b) which contains the general authorization as we have previously

---

1. As one example, *see Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1388 (3d Cir. 1985), *cert. denied sub nom DialAmerica Mktg., Inc. v. Brock*, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255.

   The Act provides in relevant part that "a court may award reasonable fees and expenses of attorneys, . . . to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action." 28 U.S.C. § 2412(b) (1982). The Act provides an exception to the award of attorney's fees if "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

2. In *Dewalt v. Sullivan*, 963 F.2d 27 (3d Cir. 1992), for example, the original claim had been brought under the Social Security Act, 42 U.S.C. § 301, et seq., which does not contain a provision for fee-shifting referenced under § 2412(b). Accordingly, courts have consistently evaluated claims for fees against the government under this statute as falling under § 2412(d).

noted. This authorization would permit an award to *either* the United States or a private citizen who is a prevailing party. But what we hadn't previously focused on, is the meaning of the second sentence of § 2412(b) which specifically addresses the *extent* of the liability in certain instances when the *United States* is not the prevailing party. This sentence seeks to create a parity for those plaintiffs who are suing the government rather than a private party on a cause of action for which there is fee-shifting as against a private party either at common law or by statute; in those circumstances, the fee liability of the government is to be the same. By contrast, § 2412(d) *mandates* a (capped) fee award to the prevailing party who sues the government if the government's position was not substantially justified. Viewed in this light, § 2412(d) appears to be a fail-safe provision; even if the court has declined to exercise discretion to award fees to any prevailing party—as it *may* under § 2412(b)—it cannot refuse fees if § 2412(d) applies. Therefore, the waivers of sovereign immunity set forth in § 2412(b) and § 2412(d) are fairly specific and we conclude that the waiver in § 2412(b) is distinct from that in § 2412(d).

Our reading is supported by the House Report on S.265, a bill presented to broaden the fee-shifting framework under the then existing Civil Rights Attorney's Fees Awards Act. That proposal became the Equal Access to Justice Act. Its purpose was noted, in part, as:

> to reduce the deterrents and disparity by *entitling certain* prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States, *unless* the government action was substantially justified. *Additionally*, the bill ensures that the United States will be subject to the common law and statutory excep-

tions to the American rule regarding attorney fees. This change will allow a court in its discretion to award fees against the United States to the same extent it may presently award such fees against other parties.

H.R.Rep. No. 96–1418 (Sept. 26, 1980), U.S.Code Cong. & Admin.News 1980, 4984(emphasis added). The first part of this statement recites what § 2412(d) accomplishes. The second part notes that, *in addition*, certain exceptions to the "American rule" (i.e., against fee shifting) are allowed—noting what is accomplished in the second sentence of (b), and appearing to reflect the separateness of the second sentence of § 2412(b) from the purpose and scope of § 2412(d).

### B. The Case Law

Our case law is not in conflict with this reading. As noted above, the majority of instances in which we have been asked to consider appeals under the EAJA have been situations in which appellants are either seeking or challenging awards under § 2412(d). Thus, these decisions are not instructive here. In these cases, we have credited the general permission to grant fees under the first sentence of § 2412(b) as authorizing fee awards that are calculated using § 2412(d), viewing the mandatory language in § 2412(d) as directing the discretion given in the first sentence of § 2412(b); we have no need to disturb these prior rulings. Recently, we did have occasion to address a request by a claimant for an award specifically under the provisions of § 2412(b), and, there, while finding plaintiff not entitled to fees under § 2412(b), we treated assessment of fee awards under the two sections as analytically distinct. *See Morgan v. Perry*, 142 F.3d 670, 683 n. 26 (3d Cir.1998), *cert. denied sub nom Morgan v. Cohen*, 525 U.S. 1070, 119 S.Ct. 801, 142 L.Ed.2d 662

(1999). We rejected the claimant's argument that he was *entitled* to fees under § 2412(b) because Morgan had not identified a "statute or rule of common law which specifically provides for an award of attorney's fees" for his claim. *Id.*

The case law of other Courts of Appeals comports with this analysis. *See, e.g., Maritime Mgmt., Inc. v. United States,* 242 F.3d 1326, 1331 (11th Cir.2001)("The statutory framework of 28 U.S.C. § 2412 contains two parallel provisions for awarding attorneys' fees to plaintiffs that prevail in civil suits against the United States."); *Kerin v. USPS,* 218 F.3d 185, 189 (2d Cir.2000)("The EAJA contains two distinct and express statutory waivers of sovereign immunity permitting the recovery of attorneys' fees in lawsuits brought by or against the United States."); *see also Hyatt v. Apfel,* 195 F.3d 188 (4th Cir.1999)(affirming an award of fees calculated in part under § 2412(d) and in part under § 2412(b) where part of the litigation was conducted in bad faith).

Most scholars also agree, noting that while the liability under § 2412(b) is open-ended, the provisions are designed to even the playing field in some situations, while the provisions of § 2412(d) are intended to require some fee relief in certain circumstances.

> The Equal Access to Justice Act coupled an unprecedented expansion in the government's liability for attorneys' fees with strict limitations on the availability and calculation of those fees. Both the expanded liability and the fee restrictions are essential to the statutory goal of deterring and correcting unreasonable government conduct. At the same time, however, the EAJA enacted a separate, relatively narrow provisions, Section 2412(b), waiving the government's immunity from the fees to which other litigants have long been subject. Unlike

section 2412(d), section 2412(b) is neither novel nor visionary. It is intended only to place the United States on the same footing as any other litigant.

June Carbone, *The Misguided Application of Traditional Fee Doctrine to the Equal Access to Justice Act,* 26 B.C.L.Rev. 843, 897–98 (1985). *See also* Gregory C. Sisk, *A Primer on Awards of Attorney's Fees Against the Federal Government,* 25 Ariz. St. L.J. 733, 786–88 (1993); John J. Sullivan, *The Equal Access to Justice Act in the Federal Courts,* 84 Colum. L.Rev. 1089, 1093 (1984).

Because we find § 2412(b) and § 2412(d) to provide for different types of fee awards, and because the cap on fees is positioned in § 2412(d) and is to apply only to fees awarded under that subsection, we conclude that the District Court misconceived the cap on fees awarded under § 2412(d) as applying to all fees awarded under § 2412.

■ The District Court recognized that there is an unresolved issue as to whether fees may be awarded under the ADEA when suing the government, but it determined that it need not decide the issue because the parties had specified that fees were to be calculated under the EAJA. We agree that the language in the consent judgment, whereby the parties agreed that fees should be awarded under the EAJA, dispenses with the need for us—or the District Court on remand—to examine the extent of the waiver of sovereign immunity under the ADEA. Rather, since the EAJA provides for "parity" in the allowance of fees against the government in actions in which, by statute, private party defendants are required to pay fees, and since the ADEA is such a fee-shifting statute, section 2412(b) would apply.

Accordingly, we will VACATE the Order awarding attorneys' fees and REMAND to the District Court for recalculation of the fee in a manner consistent with this opinion.